Slip Op. 21-68

## UNITED STATES COURT OF INTERNATIONAL TRADE

CARPENTER TECHNOLOGY
CORPORATION, ET AL.,

        Plaintiffs,

    v.

UNITED STATES,

        Defendant,

   and

VENUS WIRE INDUSTRIES PVT. LTD.,
ET AL.,

        Defendant-Intervenors.

Before: Mark A. Barnett, Chief Judge
Court No. 19-00200

## <u>OPINION AND ORDER</u>

[Sustaining the U.S. Department of Commerce's final results upon remand redetermination in the administrative review of the antidumping duty order on stainless steel bar from India and denying the proposed defendant-intervenor's motion to intervene.]

Dated: June 2, 2021

<u>Grace W. Kim</u> and <u>Laurence J. Lasoff</u>, Kelley Drye & Warren LLP, of Washington, DC, for Plaintiffs.

<u>Kara M. Westercamp</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director. Of counsel on the brief was <u>Elio Gonzalez</u>, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Eric C. Emerson</u> and <u>St. Lutheran M. Tillman</u>, Steptoe & Johnson LLP, of Washington, DC, for Defendant-Intervenors.

Court No. 19-00200                                                                    Page 2

Barnett, Chief Judge: This matter is before the court following the U.S.

Department of Commerce's ("Commerce" or "the agency") redetermination upon court-

ordered remand.  *See* Results of Redetermination Pursuant to Court Remand ("Remand

Results"), ECF No. 34-1; *see generally Carpenter Tech. Corp. v. United States*

("*Carpenter Tech. I*"), 44 CIT ___, 477 F. Supp. 3d 1356 (2020); *Stainless Steel Bar*

*From India*, 84 Fed. Reg. 56,179 (Dep't Commerce Oct. 21, 2019) (final results of

admin. review of the antidumping duty order; 2017–2018) ("*Final Results*"), ECF No. 20-

4, and accompanying Issues and Decision Mem., A-533-810 (Oct. 15, 2019), ECF No.

20-5.[1]

Plaintiffs[2] commenced this action alleging, *inter alia*, that Commerce failed to

adequately explain its selection of partial adverse facts available (or "partial AFA")[3] used

---

[1] The administrative record associated with the *Final Results* is divided into a Public
Administrative Record, ECF No. 20-1, and a Confidential Administrative Record, ECF
No. 20-2.  The administrative record for the Remand Results is likewise divided into a
public record and confidential record.  *See* [Am.] Public Index to Admin. [Remand] R.,
ECF No. 49-2; Confidential Index to Admin. [Remand] R., ECF No, 35-2.  Parties
submitted a joint appendix containing record documents cited in their remand briefs.
*See* Public Remand J.A., ECF No. 50.  Venus's comments on the draft remand results
and Commerce's final calculation memorandum for the Remand Results were filed
separately by Plaintiffs.  Confidential Pls.' Submission of R. Docs., Attach. 1 ("Venus's
Draft Remand Cmts."), Attach. 2, ECF No. 51; *see also* [Public] Pls.' Submission of R.
Docs., ECF No. 52.

[2] Plaintiffs consist of Carpenter Technology Corporation; Crucible Industries LLC;
Electralloy, a Division of G.O. Carlson, Inc.; North American Stainless; Valbruna Slater
Stainless, Inc.; Universal Stainless Alloy Products, Inc.

[3] When "necessary information is not available on the record," or an interested party
"withholds information" requested by Commerce," "fails to provide" requested
information by the submission deadline, "significantly impedes a proceeding," or
provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i),
Commerce "shall . . . use the facts otherwise available."  19 U.S.C. § 1677e(a).  If
Commerce determines that the party "has failed to cooperate by not acting to the best of

to determine Defendant-Intervenors' ("Venus")[4] antidumping duty margin.  *See* Compl.

¶¶ 20–21.  In *Carpenter Technology I*, the court granted Defendant United States' ("the

Government") request to remand the *Final Results* to Commerce to permit the agency

to explain further its selection of partial AFA and "modify its determination accordingly."

477 F. Supp. 3d at 1362.

In the remand redetermination, Commerce further explained its partial AFA

methodology used in the *Final Results*.  *See* Remand Results at 6–9.  Additionally,

Commerce made three corrections to Venus's margin calculation program, which

increased its rate from 5.35 percent to 24.60 percent.  *See id.* at 9–11.

Following Commerce's issuance of the Remand Results, Laxcon Steels Limited

("Laxcon"), "a producer/exporter of the subject merchandise . . . who contested" the rate

assigned to non-individually examined respondents in the *Final Results*, filed a motion

for permissive intervention as a defendant-intervenor.  *See* Mot. to Intervene ("Laxcon's

Mot.") at 2, ECF No. 36.  Plaintiffs and the Government opposed Laxcon's motion.  *See*

Pls.' Opp'n to Mot. to Intervene, ECF No. 42; Def.'s Resp. to [Laxcon's] Mot. to

Intervene, ECF No. 43.  Venus took no position on the motion.  *See* [Venus's] Resp. to

[Laxcon's] Mot. to Intervene, ECF No. 44.

Venus submitted comments on the Remand Results contending that the three

adjustments to its margin program are not in accordance with the law and exceed the

---

its ability to comply with a request for information," Commerce "may use an inference
that is adverse to the interests of that party in selecting from among the facts otherwise
available."  *Id.* § 1677e(b).
[4] Defendant-Intervenors or Venus consist of Venus Wire Industries Pvt. Ltd.; Precision
Metals; Sieves Manufacturers (India) Pvt. Ltd.; and Hindustan Inox Ltd.

scope of the court's remand order.  *See* [Venus's] Cmts. on the Remand

Redetermination ("Venus's Cmts."), ECF No. 40.  The Government and Plaintiffs urge

the court to sustain the Remand Results in their entirety.  *See* Def.'s Resp. to Cmts. on

the Remand Redetermination ("Gov't Cmts."), ECF No. 46; Pls.' Cmts. in Supp. of the

Remand Redetermination ("Pls.' Cmts."), ECF No. 47.

For the following reasons, the court denies Laxcon's motion and sustains

Commerce's Remand Results.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[5] and 28 U.S.C. § 1581(c).

The court will uphold an agency determination that is supported by substantial evidence

and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a

redetermination pursuant to court remand are also reviewed for compliance with the

court's remand order."  *SolarWorld Ams., Inc. v. United States*, 41 CIT ___, ___, 273 F.

Supp. 3d 1314, 1317 (2017) (citation omitted).

### BACKGROUND[6]

For the *Preliminary Results*, Commerce explained that Venus reported

consuming certain stainless steel rounds ("SS rounds"), which it purchased from an

unaffiliated producer, to produce subject merchandise.  *See* Decision Mem. for Prelim.

---

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of
Title 19 of the U.S. Code, 2018 edition.

[6] The court has issued an opinion providing additional relevant background; familiarity
with that opinion is presumed.  *See Carpenter Tech. I*, 477 F. Supp. 3d at 1358–61.

Results of Antidumping Duty Admin. Review, A-533-810 (Apr. 9, 2019) ("Prelim. Mem.")

at 5–6, *available at* https://enforcement.trade.gov/frn/summary/india/2019-07560-1.pdf

(last visited May 24, 2021).  Commerce determined that the SS rounds in question were

subject merchandise, *id.* at 8; the stainless steel bar produced from the purchased SS

rounds were produced by Venus's suppliers, *id.* at 5–6, 8; and, thus, Venus was

required to provide the unaffiliated suppliers' cost of production for the SS rounds, *id.* at

9.  Venus failed to provide this information and Commerce preliminarily relied on partial

AFA to determine the cost of production for the SS rounds at issue.  *See id.* at 10.  For

the *Final Results*, Commerce continued to rely on partial AFA to determine the cost of

production for the SS rounds but revised its AFA methodology without providing

interested parties an opportunity to comment on that methodology.  *See Carpenter*

*Tech. I*, 477 F. Supp. 3d at 1361–62.

Plaintiffs filed a motion for judgment on the agency record contending that: "(1)

Commerce did not adequately explain or provide notice of its decision to revise its

methodology for determining partial AFA for the *Final Results*; and (2) Commerce's

application of the revised methodology [was] not supported by substantial evidence or in

accordance with the law."  *Id.* at 1359 (citations omitted).  The Government requested

that the court remand the matter in its entirety to allow the agency to further explain or

reconsider the partial AFA methodology "and if appropriate, the rates assigned to the

respondents."  *Id.* (citation omitted).  Venus contended that the Government's remand

request was "overly broad and vague," *id.* at 1362 n.8, but otherwise took no position on

the remand request, *id.* at 1359.

The court found that substantial and legitimate concerns supported the Government's remand request and granted it.  *See id.* at 1361–63.  In so doing, the court rejected Venus's contention that the scope of the remand request was overly broad and vague.  *See id.* at 1362 n.8.  The court found that "the scope of the requested remand [was] appropriate," and that "it [was] appropriate that the court remand this matter to allow Commerce to consider Plaintiffs' arguments and further explain or modify its determination accordingly."  *Id.* at 1362.

In the remand redetermination, Commerce continued to rely on the revised partial AFA methodology from the *Final Results* and provided further explanation for doing so.  *See* Remand Results at 6–9.  Commerce also made three changes to Venus's margin program in conjunction with its application of partial AFA.

First, Commerce explained that it had not included some of Venus's U.S. sales in the *Final Results* margin calculation.  *See id.* at 9.  Thus, for the Remand Results, Commerce included all of Venus's U.S. sales in its margin program.  *See id.* at 10, 17.

Second, Commerce also explained that the partial AFA methodology used in the *Final Results* "did not match sales and costs by manufacturer as required by the statute and Commerce's normal practice."  *Id.* at 10 (discussing the agency's obligations pursuant to 19 U.S.C. §§ 1677(16) and 1677b(a)(1)(B)(1)).  On remand, Commerce "considered manufacturer codes when comparing [the] U.S., home market and cost databases in [the] analysis."  *Id.* at 10–11 (citation omitted); *see also id*. at 17–18.

Third, Commerce determined that it was appropriate to make its AFA adjustment not only to Venus's cost of production, but also to the other components of cost,

including variable cost of manufacture and fixed and variable overhead.  *See id.* at 11,

18.  These adjustments were appropriate to reflect more accurately Commerce's use of

AFA in the calculation of difference-in-merchandise adjustments when comparing U.S.

sales to home market sales.  *Id.* at 11.

Venus contended that the three changes to its margin calculation program were

"fundamentally unfair."  *Id.* at 15; *see also* Venus's Draft Remand Cmts. at 2–3.  Venus

did not, however, challenge the evidentiary basis underlying the corrections.  *See*

Venus's Draft Remand Cmts. at 2–3.  Commerce rejected Venus's contentions,

Remand Results at 16–19, and as a result of the foregoing changes, Venus's rate

changed from 5.35 percent to 24.60 percent, *id.* at 9.

DISCUSSION

### I.   Laxcon's Motion to Intervene

U.S. Court of International Trade ("USCIT") Rule 24 provides for two types of

intervention: intervention of right and permissive intervention.  *See also* 28 U.S.C.

§ 2631(j)(1), (2).  A party must seek intervention as a matter of right "no later than 30

days after the date of service of the complaint" unless the party can show good cause

for the delay.  USCIT Rule 24(a)(3).  Alternatively, a party may move for permissive

intervention, in which case "the court must consider whether the intervention will unduly

delay or prejudice the adjudication of the original parties' rights."  USCIT Rule 24(b)(3);

*see also* 28 U.S.C. § 2631(j)(2).  In a case arising under 19 U.S.C. § 1516a, such as

this, "only an interested party who was a party to the proceeding in connection with

which the matter arose may intervene, and such person may intervene as a matter of

right."  28 U.S.C. § 2631(j)(1)(B); *see also Dofasco Inc. v. United States*, 31 CIT 1592,

1594–95, 519 F. Supp. 2d 1284, 1286 (2007) (collecting cases and explaining that "the

right to intervene established [under 28 U.S.C. § 2631(j)(1)(B)] [was] the only means by

which [a party] may intervene in" that case, which arose under 19 U.S.C. § 1516a).

 Laxcon acknowledges that the deadline has passed for it to intervene as a matter

of right and does not attempt to show good cause for the delay.  Laxcon's Mot. at 2.

Thus, the court declines to construe the motion as one to intervene as of right.  Instead,

Laxcon moves for permissive intervention.  *See id.* at 2–3.  Because the statute does

not permit Laxcon to intervene as a permissive intervenor in this case, the court denies

Laxcon's motion.[7]  *See* 28 U.S.C. § 2631(j)(1)(B).

## II.  Venus's Challenges to the Remand Results

### A.  Parties' Contentions

 Venus urges the court to remand the Remand Results for three reasons.  First,

Venus contends that Commerce "exceeded the scope of its own request for voluntary

remand and the scope of the [c]ourt's grant of that request."  Venus's Cmts. at 2.

Second, Venus contends that Commerce's changes to its margin calculation program

demonstrate that the purpose of the Government's remand request had nothing to do

with the partial AFA methodology but was meant to allow Commerce to determine a

higher, punitive margin.  *See id.* at 4–5.  Third, Venus contends that remand is

necessary so that Commerce may take into account the court's opinion in *Venus Wire*

*Indus. Pvt. Ltd. v. United States*, 44 CIT ___, 471 F. Supp. 3d 1289 (2020), in which the

---

[7] In any case, Laxcon did not seek to present any distinct or additional arguments and
instead simply incorporated Venus's comments on the Remand Results.

court remanded Commerce's reliance on total AFA in the changed circumstances review of the antidumping duty order.  *See id.* at 6–7.

The Government contends that the court should reject Venus's argument that Commerce exceeded the scope of the remand order because Venus did not exhaust its administrative remedies with respect to this argument.  Gov't Cmts. at 6.  Alternatively, the Government contends that the court should construe the remand order as allowing Commerce to make the corrections at issue.  *Id*. at 6, 8; *see also* Pls.' Cmts. at 2–4 (arguing that Commerce did not exceed the scope of the court's remand order).

Next, the Government and Plaintiffs aver that Commerce appropriately considered the inducement effect of increasing Venus's margin in making the corrections at issue.  *See* Gov't Cmts. at 9–10; Pls.' Cmts. at 4.  The Government further contends that the court should not remand Commerce's reliance on partial AFA in light of the court's decision in *Venus Wire* because "the [c]ourt's decision in [*Venus Wire*] involves a different determination by Commerce in a separate segment of the proceeding with a different record and facts."  Gov't Cmts. at 11; *see also* Pls.' Cmts. at 4.  Finally, the Government urges the court to reject Venus's challenges to Commerce's reliance on partial AFA because Venus chose not to appeal the *Final Results* and may not now litigate its own challenges to Commerce's determination.  *See* Gov't Cmts. at 11.

### B.  Commerce Did Not Exceed the Scope of the Court's Remand Order

As a general matter, "[u]nless specifically directed by the court, Commerce has broad discretion to fully consider the issues remanded."  *ABB, Inc. v. United States*, 41 CIT ___, ___ n.14, 273 F. Supp. 3d 1186, 1199 n.14 (2017), *aff'd*, 920 F.3d 811 (Fed.

Cir. 2019) (citation omitted); *cf. Chung Ling Co. v. United States*, 17 CIT 829, 833–34, 829 F. Supp. 1353, 1358–59 (1993), *aff'd*, 29 F.3d 645 (Fed. Cir. 1994) (finding that the scope of the remand order permitted certain corrections to the injury determination).

In *Carpenter Technology I*, the court granted the Government's request to remand the matter "in its entirety," 477 F. Supp. 3d at 1362 n.10, and permitted the agency to "further explain or modify its determination accordingly," *id.* at 1362. Given the broad language of the remand order and the absence of limiting language, Commerce was permitted on remand to reconsider those aspects of Venus's margin that resulted in the corrections at issue. *See* Remand Results at 9–11.

Venus relies on *Zhaoqing Tifo New Fibre Co. v. United States*, 41 CIT ___, ___, 256 F. Supp. 3d 1314, 1334–35 (2017), for the proposition that "remand instructions need not contain 'specific limiting instructions' in order for Commerce to have been found to exceed the scope of the remand instructions." Venus's Cmts. at 3 & n.7. However, the court in *Zhaoqing Tifo* concluded that Commerce exceeded the scope of the remand instructions when it made a change that went beyond the litigated issue in that case. 256 F. Supp. 3d at 1335–37 (finding Commerce's change of financial statements on remand to exceed the remand instructions). In contrast, in this case, the court used broad language in issuing the remand order and the changes are directly related to Commerce's application of its partial AFA methodology as remanded by the court. Thus, *Zhaoqing Tifo* is inapplicable.

Accordingly, the court finds that Commerce did not exceed the scope of the remand order by making the corrections at issue.[8]

### C. Commerce's Changes to Venus's Margin Calculation are in Accordance with the Law

Venus takes issue with Commerce's statement that the corrections at issue were appropriate to "potentially induce [Venus] in future segments to source from producers of subject merchandise that will cooperate in these proceedings by providing necessary information."[9]  Venus's Cmts. at 5 (quoting Remand Results at 9).  According to Venus, the true purpose of the remand request was to provide Commerce an opportunity "to return a higher and more punitive margin in an effort to induce future cooperation."  *Id*.

The court disagrees.  As an initial matter, Venus does not explain why it considers that the corrections at issue were unlawfully punitive, inappropriate, or unreasonable in the exercise of the agency's discretion to select facts available with an adverse inference to fill gaps in the record that Venus did not otherwise fill.  Moreover, it is well established that Commerce may rely on AFA to induce respondents to cooperate with the agency's investigations in the future and "ensure that the party does not obtain

---

[8] The Government correctly points out that Venus did not argue before Commerce that the changes at issue exceed the scope of the court's remand order.  *See* Gov't's Cmts. at 6–7; Venus's Cmts. on Draft Remand Results.  However, the court need not resolve the Government's exhaustion argument because the changes were within the scope of the court's remand order.

[9] Venus also contends that the Government's remand request and the resulting redetermination are invalid because Commerce did not identify an error in the *Final Results* that it sought to correct on remand, and thus, the remand request lacked compelling justification.  *See* Venus's Cmts. at 4.  The court rejected this argument in *Carpenter Technology I* and will not reconsider that decision here.  447 F. Supp. 3d at 1362 & n.8 (rejecting Venus's argument that the Government's remand request failed to identify an error, and thus, was overly vague).

a more favorable result by failing to cooperate than if it had cooperated fully."  Uruguay

Round Agreements Act, Statement of Administrative Action ("SAA"),[10] H.R. Doc. No.

103-316, vol. 1, at 870 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4199; *see also*

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014).

Commerce's reference to a possible inducement effect of its selection of AFA does not,

by itself, suggest a punitive or otherwise inappropriate basis for Commerce's changes to

the margin calculation program and the court will not infer an improper motive solely on

the basis of the result.

 For these reasons, the court rejects Venus's argument that Commerce's reasons

for making the corrections at issue were unlawful.

 **D.  The Court Will Not Order a Remand in Light of *Venus Wire***

 Finally, Venus contends that a remand is necessary so that Commerce may

consider the court's opinion in *Venus Wire*, which remanded the agency's reliance on

total AFA in the changed circumstances review of the antidumping duty order.  *See*

Venus's Cmts. at 6; *see generally Venus Wire*, 471 F. Supp. 3d at 1307–13 (remanding

Commerce's reliance on total AFA).[11]

 Commerce had no occasion to consider *Venus Wire* in deciding the *Final Results*

because *Venus Wire* had not yet been decided.  *See* Venus's Cmts. at 6

---

[10] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements Act." 19 U.S.C. § 3512(d).

[11] In the changed circumstances review, Commerce relied on total AFA based on Venus's failure to provide cost of production data.  *Venus Wire*, 471 F. Supp. 3d at 1307.  However, that changed circumstances review covered a different period of review, resulted in a different Commerce determination, and is based on a distinct

(acknowledging that the "*Final Results* were issued after the [c]ourt's decision in

"[*Venus Wire*]") (italicization added).  Subsequently, Venus chose not to challenge the

*Final Results* or Commerce's decision to rely on partial AFA and, instead, limited its

participation to that of a defendant-intervenor.  *See* Order (Jan. 13, 2020), ECF No. 19.

Because Venus is a defendant-intervenor, it may not litigate aspects of Commerce's

determination—including the agency's reliance on partial AFA—not raised in Plaintiffs'

complaint.  *See Zhaoqing Tifo New Fibre Co. v. United States*, 42 CIT ___, ___, 355 F.

Supp. 3d 1285, 1300 (2018) ("Issues that are not the subject of a timely-filed complaint

cannot, as a general rule, be entertained by the court."); *Torrington Co. v. United States*,

14 CIT 56, 57, 731 F. Supp. 1073, 1075 (1990) ("[A]n intervenor is limited to the field of

litigation open to the original parties, and cannot enlarge the issues tendered by or

arising out of plaintiff's bill.").  Thus, the court rejects Venus's request to require

Commerce to reconsider its reliance on partial AFA in light of *Venus Wire*.

Similarly, Venus acknowledges that it did not challenge Commerce's reliance on

partial AFA in the *Final Results* because its rate "was only 5.35 percent."  *See* Venus's

Cmts. at 6.  To the extent that Venus seeks relief from the corrections Commerce made

to its margin program, Commerce supported those corrections with substantial

evidence, *see* Remand Results at 9–11, 16–19, and Venus does not challenge the

evidentiary basis for the corrections.

---

record.  Given these differences, Venus did not adequately develop an argument for the
court to consider whether the record facts were similar enough such that Commerce
might be expected to explain any differences in the outcome of the reviews.

Court No. 19-00200                                                                         Page 14

For these reasons, the court finds that the Remand Results are supported by

substantial evidence, in accordance with the law, and consistent with the court's remand

order in *Carpenter Technology I*.

**CONCLUSION AND ORDER**

In accordance with the foregoing, Commerce's Remand Results will be

sustained.  Judgment will enter accordingly.  Further, it is **ORDERED** that Laxcon's

motion to intervene is **DENIED**.


                                            /s/      Mark A. Barnett
                                            Mark A. Barnett, Chief Judge

Dated:    June 2, 2021
          New York, New York